**V/O EXPORTKHLEB**

v.

**M/V ANPA, In Rem, et al.**

No. 90–0862.

United States District Court,
E.D. Louisiana.

Sept. 9, 1991.

John Harold Clegg, Robert Burns Fisher, Jr., Daphne P. McNutt, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants Sea Port Shipping Co., Ltd., Transmed Shipping Ltd.

Ralph E. Smith, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants Degesch America Inc.

Thomas Livingston Gaudry, Jr., Patricia Marie Crowley, Frederick H. Dwyer, Windhorst, Gaudry, Talley & Ranson, Gretna, La., for defendant Zurich Ins. Co. and third-party defendant American Guar. and Liability Ins. Corp.

Peter L. Hilbert, Jr., Kathleen K. Charvet, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for third-party defendant Universal Shipping Agency, Inc.

Vivian Joseph Gianelloni, III, American Admiralty Bureau, New Orleans, La., for movant American Admiralty Bureau, Ltd.

J. Dwight Leblanc, III, Lemle & Kelleher, New Orleans, La., for third-party defendant V/O Exportkhleb.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter involving the March 12, 1989 allision of the M/V ANPA with the Nashville Avenue Wharf while transiting the Mississippi River, was commenced pursuant to the Admiralty Jurisdiction of this Court. The claims by and between all of the parties to these consolidated proceedings were settled, with the exception of the cross-claim which was to be and in fact was filed against defendant, Degesch America, Inc. ["Degesch"][1] by its alleged insurer, Zurich Insurance Co. ["Zurich"][2] for reimbursement in the amount of the funded settlement and attorney's fees paid Degesch in defense of the main claims. Ac-

John Barr Gooch, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, La., for plaintiff.

1. Degesch is a corporation organized under the laws of Delaware, having an office and a principal place of business in Weyers Cave, Virginia and Reserve, Louisiana. It was retained by Peavey Company to fumigate a quantity of wheat loaded aboard the M/V ANPA prior to the allision which was the subject of the main claims. Degesch was named as a direct defendant by Exportkleb Shipping Company and a

third party defendant by Seaport Shipping Co., Ltd. and by Transmed Shipping Co.

2. Zurich issued a policy of liability insurance to Degesch, which policy was in effect from January 1, 1989 to March 23, 1989. Zurich is not domiciled in either Louisiana or Virginia and at the time the policy was written was not licensed to do business in the state of Virginia.

cordingly, the sole issues then before this Court for bench trial August 15, 1991 involved the coverage dispute aforementioned. The Court for reasons which will hereinafter be set forth in detail has determined that Zurich waived its "late notice" defense and ratified any and all action taken by or on behalf Degesch, its insured, upon hiring Degesch's counsel Ralph Smith in March of 1990 to defend both Degesch and Zurich's interest, without reservation of any rights. The Court is further of the opinion, that such suit against its own insured by Zurich is against public policy of the State of Louisiana.

To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are so adopted.

## I. FINDINGS OF FACT:

On March 12, 1989, the M/V ANPA, after departing the Peavey terminal above New Orleans and while transiting the Mississippi River, struck the Nashville Avenue Wharf in New Orleans, Louisiana, which resulted in damage to the wharf, the vessel and the vessel's cargo. Prior to the ANPA's departure from the Peavey terminal above New Orleans, Degesch installed tubing and recirculating equipment for in-transit fumigation of a cargo of Soviet-bound northern spring wheat as required by the vessel's charterers.

On March 13, 1989, following the collision, the vessel's cargo was removed from ANPA's hold No. 1. The damage sustained to hold No. 1 made it necessary to discharge the grain to survey for damage, and make repairs. During the period of March 13, 1989 up until March 17, 1989, there was no suggestion made by any of the parties to the effect that Degesch in any way caused or contributed to the aforementioned casualty of March 13, 1989 involving ANPA. James W. Sharpe, ANPA's local agent boarded the ANPA shortly af-

ter the accident to remove the fumigant from ANPA's No. 1 hold,[3] however he was not informed at such time that Degesch was involved and therefore, did not inspect the electrical equipment on board at that time.

Via telefax transmission dated March 17, 1989 on behalf of the owners of the ANPA, Degesch was put on notice of said owners' intent to hold it responsible for the damages resulting from the March 13, 1989 allision occasioned by its alleged improper installation of equipment aboard the vessel at Peavey's grain elevator on March 11, 1989.[4] During the time intervening between the date of the allision and notice to Degesch the following occurred: (1) the cargo from Hold No. 1 of the vessel had been discharged and disposed of to salvage purchasers; (2) surveys had been conducted by persons representing vessel and wharf interests; and (3) Degesch was neither notified of said surveys nor invited to participate.

Upon being notified approximately five days after the accident, Degesch engaged the services of Ralph E. Smith, Esq. of the lawfirm Deutsch, Kerrigan and Stiles in New Orleans, Louisiana, who immediately began an investigation, and in that vein called for a survey of the vessel, her cargo and the wharf. Mr. Smith further filed a petition to perpetuate the testimony of the master, chief engineer and other crewmembers onboard the ANPA in addition to retaining the services of Charles L. Reimer, Jr., a marine surveyor to attend the surveys and determine the necessity of engaging the services of any additional specialized surveyors, in the event the situation so dictated.

In fact all ANPA crewmembers who had any involvement in the events leading up to the allision were deposed, relevant shipboard surveys and inspections were conducted to determine the cause of the damage, and a report regarding same was made to Degesch based on the allegations

---

**3.** The damage sustained to ANPA's No. 1 hold made it necessary to discharge the grain to survey and repair suspected damage.

**4.** See, Telefax No. 536–8563 to Degesch America, dated March 17, 1989 [Hearing on Coverage, Degesch Exh. "9"].

then existing as to Degesch.[5] Further investigation ensued which included obtaining sworn statements from Gulf–Best Electric employees who corrected problems aboard the ANPA after the allision, and the investigative report of the Coast Guard in this matter, which was included in Smith's final report to Degesch.

On December 12, 1989, Lewis Jolly, general counsel for Degesch, reported the occurrence involving the ANPA to Degesch's insurance broker, Marsh & McLennan in Richmond, Virginia. On December 20, 1989, William Yates of Marsh & McLennan passed the information along to Zurich's underwriting agent, B & D.A. Weisberger.[6]

Smith responded to requests for information by Zurich's claims specialist and provided copies of investigative materials and his reports dated March 28th and April 26th of 1989. Said claims representative concurred with Smith's opinion.[7]

As late as January 19, 1990 no legal action had been initiated, when Zurich's Dallas claims representative Scott Collier contacted Ralph Smith [Degesch's counsel], thanking him for his [Smith's] visit on January 1, 1990 concerning the ANPA matter and stating in pertinent part:

As we discussed [it] appears no legal action has been taken at this time against *our Insured* [Degesch] and that we should simply await any such action since *our* **investigation is complete.**

\* \* \* \* \* \*

By investigating the claim initially, that may have served to prevent any legal action. Should any adverse develop-

ments arise, please contact me directly.[8] [emphasis supplied].

Finally, on March 9, 1990, suit was filed by Exportkhleb naming Degesch *inter alia* as a defendant. Degesch, through its general counsel, Lewis Jolly, referred the complaint to Zurich.[9] On March 12, 1990, the complaint was forwarded to Zurich's Dallas office. On March 26, 1990, Zurich acknowledged the citation and petition, and referred the defense of the matter to Ralph Smith Degesch's local counsel for defense without reservation, to wit:

We [Zurich] have received the Citation and Petition served on you in connection with the above entitled matter [Claimant–V/O Exportkhleb/Insured–Degesch Date of Loss 3/12/89]. In accordance with your policy with our company, we will see that an Appearance and Answer is filed on your behalf. These papers have been referred to:

Ralph Smith

Deutsch, Kerrigan & Stiles

755 Magazine St.

New Orleans, Louisiana 70130–3672

You may be assured that the necessary action will be taken for the protection of your interests. You will, of course, hear from the attorneys and we anticipate that you will cooperate with them fully. Should any additional papers be served on you, or should you get any further information relating to this case, please advise us immediately.[10]

Additional claims, cross-claims and/or third-party claims were referred by Zurich as received by Degesch and were referred to Ralph Smith of Deutsch, Kerrigan and Stiles for defense.[11] On May 14, 1990,

---

5. See, Opinion Letter of Ralph Smith, dated March 28, 1989 [Hearing on Coverage, Degesch Exh. "11"].

6. Letter of Marsh & McLennan dated December 20, 1989 [Hearing on Coverage, Degesch Exh. "8"]. See also, FAX Message to Zurich Insurance Company dated January 2, 1990 [Hearing on Coverage, Degesch Exh. "7"].

7. Letter from Zurich's Claims Specialist Scott Collier to Ralph Smith dated January 19, 1990 [Hearing on Coverage, Degesch Exh. "1"].

8. Hearing on Coverage, Degesch Exh. "1".

9. See, Zurich's Response to Requests for Admissions, No. 38 [Hearing on Coverage, Degesch Exh. "19"].

10. Letter from Zurich's Claims Specialist Scott Collier, dated March 26, 1990 [Hearing on Coverage, Degesch Exh. "4"].

11. Letters from Zurich's New Orleans Claims Manager David DeLuca to Ralph Smith dated May 29, 1990 and September 12, 1990 [Hearing on Coverage, Degesch Exh. "13" and "15"].

Zurich's New Orleans Claims manager, David DeLuca, called at the offices of Deutsch, Kerrigan and Stiles and reviewed all the pleadings and discovery documents and at which time Zurich provided Smith a litigation management guide and requested a comprehensive litigation report be completed and forwarded to Zurich's home office.[12]

On May 29, 1990, several months after hiring Degesch's counsel Ralph Smith to represent both the interests of Zurich and Degesch, and five months after the matter was fully reported to it, Zurich issued a reservation of rights letter to Degesch. Even after said reservation of rights letter issued Zurich again requested a comprehensive litigation management report, supplemental reports, copies of all documents and exhibits with respect to vessel and cargo interests, and deposition summaries. As late as October 25, 1990, Zurich continued requests for legal opinions on issues involved in the case, as well as opinions on the retained experts.[13]

It was not until November of 1990 that Zurich retained separate counsel. On March 19, 1991, only after "milking" Degesch's counsel Ralph Smith for the full product of his entire defense effort, and posturing itself for its own settlement efforts regarding the direct action against it, Zurich alleged it had been prejudiced by Degesch's failure to give timely notice of the claim and further demanded that Degesch reimburse Zurich for 50% of any settlement.[14]

**12.** See, Letter from Zurich's New Orleans Claims Manager dated May 29, 1990, confirming the discussion took place [Hearing on Coverage, Degesch Exh. "13"].

**13.** See also, Minute Entry Order of this Court dated February 28, 1991, at n. 2 and accompanying text, to wit: "As late as October 9, 1990, Zurich allowed Smith's firm to represent Zurich at the F.R.C.P. Rule 30(b)(6) deposition. In the most recent 30(b)(6) depositions ordered by the Court to develop issues relative to the whereabouts of missing evidence, counsel for Zurich did not examine any witnesses."

**14.** Letter of Zurich's counsel, Patricia M. Crowley, to Ralph Smith dated March 19, 1991 [Hearing on Coverage, Degesch Exh. "6"].

At the time of the accident at issue, Degesch was the named insured under a policy of liability insurance issued by Zurich Insurance Company bearing No. GLO–1455–016–01 effective from January 1, 1989 until March 23, 1989.[15] The policy provides per occurrence limits of $1,000,000.00 for a total premium of $47,395.00 payable at inception.[16] The territorial limits [i.e. "coverage territory"][17] of the policy include but are not limited to the United States of America.

Section IV(2) of said policy describes the duties of the insured in the event of an occurrence, claim or suit, as follows:

(a) You must see to it that we are notified promptly of an 'occurrence' which may result in a claim. Notice should include (1) how, when and where the 'occurrence' took place; and (2) the names and addresses of any injured persons and witnesses.

(b) If a claim is made or 'suit' is brought against any insured, you must see to it that we receive prompt written notice of the claim or 'suit.'

The policy at issue does not by its terms make "notice" of an "occurrence" a condition precedent to coverage.[18]

## II. CONCLUSIONS OF LAW:

### A. *Choice of Law.*

■ We now turn to a discussion of the proper application of state law and the interests that the states of Louisiana and

**15.** In 1988, Degesch obtained liability coverage from Zurich. The policy was issued in the State of Virginia by Zurich's representative, Marsh & McLennan, and delivered to the assured Degesch in Virginia at its domicile in Weyers Cave, Virginia. The reason for its issuance by Marsh & McLennan instead of by Zurich directly, was that Zurich was not licensed to do business in the state of Virginia.

**16.** See, Commercial General Liability Declarations, Zurich's Policy No. GLO 1455016–10 [Trial, Zurich/AGLIC Exh. "1"].

**17.** See, Zurich's CGL Policy No. GLO 144016–01, Section V(4)(a) [Trial, Zurich/AGLIC Exh. "1"].

**18.** See, Zurich's Supplemental Trial Memorandum, at p. 10.

Virginia have in this case. Zurich asks this Court to apply Virginia law, whereas Degesch has submitted that Louisiana law applies under the "interest analysis." Since jurisdiction in this case is based upon diversity, the choice of law rules of the forum state apply. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Louisiana Civil Code Article 15 addresses choice of law in cases such as this involving contracts: "The form and effect of ... private written instruments are governed by the laws and usages of the places where they are passed or executed...." A literal reading of this general language contained in Article 15 would indicate Virginia law should apply since the policy at issue was delivered to Degesch in Weyers Cave, Virginia. However, Louisiana courts have applied the "interest analysis" approach in resolving choice of law questions.[19]

Suit was originally brought in Louisiana against Zurich under the Louisiana Direct Action Statute—a remedy *not* available under Virginia law. The activities on the part of Degesch and all of the vessel/cargo interests took place in the state of Louisiana. Moreover, at the time the policy was delivered to Degesch in Virginia, Zurich was not even licensed to do business in that state. The most significant relationship test favors the application of Louisiana law. Moreover, qualifying language contained in Article 15, also directs this Court's focus to the place where the act [i.e., the policy] was to have effect, to wit: "[T]he effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where

such acts are to have effect...." La.Civ. Code Art. 15. The territorial limits of the Zurich's policy spanned the United States of America and beyond.[20]

The Louisiana interest underlying its insurance rule regarding "proof of actual prejudice" in order to deny a claim on the basis of "late notice"[21] involves not only protection its insured residents, but protection of Louisiana plaintiffs and the general public as well.[22] This Court notes that it has ascertained no interest that Virginia may have in this issue of notice to the insurer and the interpretation of Zurich's policy provisions, other than that this policy was issued to Degesch, a Virginia corporation. From a comparison of the Virginia interest with the Louisiana interest in protecting those who are damaged within its borders and those who do business within its borders, and in the light of the reasonable contemplation of the parties, the Louisiana rule should apply.

In the case at bar, the policy, though entered into in Virginia, was to have effect in Louisiana. Considering that, together with the fact that Zurich was not even licensed to do business in Virginia, whether the Court follows the "interest analysis" approach or the qualifying language of La. Civ.Code, Article 15, Louisiana law is the proper choice.

### B. *Late notice—Actual Prejudice— Waiver—Ratification.*

■ The fundamental purpose of the notice requirement is to prevent the insurer from being prejudiced thereby and "not to provide a technical escape hatch by which

---

**19.** *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973). See also, *Francis v. Travelers Ins. Co.*, 581 So.2d 1036, 1042 (La.App. 1st Cir.1991) [citing, *Jagers*, supra, and utilizing the "interest analysis" approach to determine that Louisiana law was applicable to UM coverage written and issued in the state of Ohio to an Ohio resident]; *Champion v. Panel Era Mfg. Co.*, 410 So.2d 1230, 1237 (La.App. 3rd Cir.1982), *cert. denied*, 414 So.2d 389 (La.1982) [a "direct action" case wherein the court recognized Louisiana court's current preference for the "interest analysis" approach in choice of laws with respect to both contracts and torts.]; and *Sutton v. Langley*, 330

So.2d 321, 327–328 (La.App. 2nd Cir.), *cert. denied*, 332 So.2d 805, 820 and 333 So.2d 242 (La.1976).

**20.** See, Note 17, supra, and accompanying text.

**21.** *Fakouri v. Insurance Company of North America*, 378 So.2d 1083 (La.App. 3rd Cir.1979).

**22.** *Champion v. Panel Era Mfg. Co.*, 410 So.2d 1230, 1237 (La.App. 3rd Cir.1982), *cert. denied*, 414 So.2d 389 (La.1982).

to deny coverage" [23] in the absence of such prejudice. One Louisiana court has stated:

> [U]nless the insurer is actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the nonprejudicial failure of its assured to give immediate notice of an accident or claim as stipulated by the policy provision.[24]

Zurich has shown no prejudice resulting from any delay in reporting the occurrence. The instant that Degesch became aware of the possibility of a claim it did everything possible to protect both itself and its insurer Zurich from any and all possible exposure at some cost to Degesch,[25] which costs to date have not been reimbursed by Zurich. Moreover, largely relying on the work-product of Degesch's own counsel, whom Zurich saw fit to hire as its own in March of 1990, Zurich was able to reach an amicable settlement of the claims made directly against it under Louisiana's Direct Action Statute LSA–R.S. 22:655. Zurich, at its own request, was directly provided complete up to the minute reports and opinions as discovery proceeded from Degesch's counsel Ralph Smith, with which opinions it agreed wholeheartedly. Said reports, opinions, surveys were made available to Zurich months before suit was filed. Zurich, indicating its satisfaction with the preliminary investigation, services, reports and opinions of Ralph Smith, sat back rather than spring into action as did its insured, apparently rather inclined "to wait and see" if suit would be filed.[26]

The notice requirement set forth in Section IV(2)(a) of the policy does *not* require that the insured report any and all occurrences or incidents. Rather, the language of the Zurich's policy is equivocal and places the onus on the insured to use its discretion and notify it of an occurrence which may result in a claim. Moreover, satisfactory notice of an occurrence contemplates some preliminary investigation by the insured. The policy language at Section IV(2)(a) requires that notice include case specific information pertaining to "how, when, and where" the occurrence took place, as well as information regarding damages and witnesses. Degesch unquestionably complied with the Section IV(2)(b) regarding prompt notice of "suit." It was not contested that Degesch notified Zurich months before suit was filed. When suit was filed and process served, Degesch immediately forwarded same to Zurich.

The rule in Louisiana is that an insurer such as Zurich must prove *actual* prejudice in order to deny a claim on the basis of not receiving notification as stipulated in the policy contract.[27] The focus of the rule requiring proof of actual prejudice is to prevent insurers from using the notice requirement to evade the fundamental purpose of the insurance contract and to assure payment of liability claims up to the liability limits for which they collected premiums.[28]

**23.** *Miller v. Marcantel,* 221 So.2d 557 (La.App. 3rd Cir.1969).

**24.** *Id.*

**25.** Degesch immediately retained counsel, surveyed the vessel, retained experts, perpetuated the testimony of crewmembers, etc.

**26.** See, Letter of Zurich's Dallas Claims Specialist Scott Collier to Ralph Smith dated January 19, 1990 [Hearing on Coverage, Degesch Exh. "1"] wherein it is stated: "As we discussed it appears that no legal action has been filed at this time against our Insured and that we should *simply await* any such action since *our investigation* is complete." (emphasis supplied). Here it is important to note that Zurich's representative is stating that its investigation is complete up to that time yet it raised no defense of "late notice." Its further action hiring Degesch's counsel Ralph Smith on March 26, 1990 [Degesch Exh. "4"] with full knowledge of the date of loss referenced in correspondence as early as January, 1990, serves both to ratify any action taken by its insured and waive any policy defense of late notice.

**27.** *Champion v. Panel Era Mfg. Co.,* 410 So.2d 1230, 1237 (La.App. 3rd Cir.1982), *cert. denied,* 414 So.2d 389 (La.1982); and *Fakouri v. Insurance Company of North America,* 378 So.2d 1083 (La.App. 3rd Cir.1979); *West v. Monroe Bakery, Inc.,* 217 La. 189, 46 So.2d 122 (1950).

**28.** *Champion,* supra; *Miller v. Marcantel,* 221 So.2d 557 (La.App. 3rd Cir.1969).

The record in this case reveals that Zurich was given ample opportunity to replicate discovery which took place prior to formal notice in January of 1990, or to pursue any discovery deemed necessary by counsel. In fact, Zurich was notified months prior to institution of any proceedings against its insured, and in more than ample time to prepare its own case. Instead, Zurich chose to hire counsel originally engaged by Degesch to protect both of their interests.

The sole ground upon which Zurich relies to deny coverage is "late notice." However, as early as January 1990, Zurich was well aware of the date of the allision and that Degesch had hired Ralph Smith to investigate the possible claims of the vessel interests. Instead of raising any "late notice" defense, Zurich in fact hired Ralph Smith to protect its own interests in March of 1990 and without reservation, thus indicating approval and ratifying all action taken by Degesch and its counsel up until that time. Zurich's earliest correspondence of January 1990 references the date of the allision, yet there was no mention of any coverage defense until five months later in May of 1990, which was several months after it hired Degesch's counsel Ralph Smith to represent its own interests as well.

■ Even assuming *arguendo* that Virginia law were to apply to this case, the same result would obtain. Under Virginia law, the question of whether notice was given "as soon as practicable" is within the province of the fact finder.[29] Virginia law prescribes no fixed formula nor ascribes any absolute time limitation for determining whether notice of an occurrence which could involve potential liability was prompt. The Virginia court's rather employ a reasonableness standard, that is whether notice was given within a reasonable time considering all of the facts and circumstances.[30] The law is "notice will be considered to be given as soon as practicable even when delayed if there is a reasonable explanation for the delay." [31]

In the case at bar, Degesch launched a full scale investigation to determine the "how, when and where" of the occurrence, which information Degesch was required to include in any notice pursuant to Section IV(2)(a) of the policy at issue. The language of the policy itself does not contemplate immediate notice, but rather notification pursuant to some preliminary investigation by the insured. Upon completion of its preliminary investigation and determination that there was no basis in fact for any claims against it arising out of the occurrence, Degesch notified Zurich. Said notification occurred in early January 1990, long before suit was filed. Moreover in compliance with Section IV(2)(b) of the policy at issue, Degesch notified Zurich immediately upon service of process of the suit.

Apparently, at the outset between notification in early January of 1990 and the end of May 1990, even Zurich itself considered notification by Degesch in January, 1990, reasonable under the circumstances.

■ In any event, by hiring Degesch's counsel as its own and without reservation Zurich waived any right it had to raise the "late notice" defense. Waiver in this case resulted from the overt acts of Zurich hiring Ralph Smith, Degesch's attorney, an act which is wholly inconsistent with its position taken month's later denying liability on account of late notice.[32]

Notice of the potential claim was received by Zurich's Claims Specialist Scott Collier in Dallas on January 2, 1990.[33] In

---

29. *State Farm Mutual Auto Ins. Co. v. Porter,* 221 Va. 592, 272 S.E.2d 196 (1980).

30. *American Mutual Liability Insurance Co. v. State Farm Mutual Auto Insurance Co.,* 293 F.Supp. 256 (W.D.Va.1968), *affirmed,* 411 F.2d 605 (4th Cir.1969).

31. *Id.*

32. Waiver may result from the affirmative act of the insurer with knowledge of the facts. *Appleman,* Insurance Law and Practice, § 9081. Representations, warranties, and conditions including conditions precedent, are all subject to waiver. *Id.* at § 9083. See also, *Tate v. Charles Aguillard Ins. and Real Estate Co.,* 508 So.2d 1371 (La.1987).

33. See Hearing on Coverage, Degesch Exh. "7".

January of 1990, Collier conferred directly with Degesch's counsel Ralph Smith regarding the claim, its history and its defense.[34] Copies of said counsel's opinion letters and reports were provided directly to Zurich's Dallas office.[35] When complaints were filed in March of 1990 against both Degesch and Zurich directly, Zurich referred both defense of itself and its insured Degesch to Ralph Smith, Degesch's counsel.[36]

■ Hiring counsel for Degesch to continue the representation of Degesch, as well as to defend its own interests is an act inconsistent with the denial of coverage and Zurich is estopped from such denial. The Louisiana Supreme Court in *Tate v. Aguillard Ins. and Real Estate*, 508 So.2d 1371, 1375 (La.1987) set forth the rule applicable to this case, to wit:

> [W]e conclude that the best view is that waiver may apply to any provision of an insurance contract under which an insurer knowingly and voluntarily elects to relinquish his right power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance. La.Civ.Code art. 1831 (1985); art. 2232 (1870).

Degesch has unquestionably carried its burden of proof showing that at the time Zurich hired counsel for Degesch to defend both of their interests, said insurer had in-depth knowledge of the claim, when it arose, the entire claims history up to that point, and the terms of its own policy, including the notice provisions thereof. Acting pursuant to formal and satisfactory notice in January of 1990, some months after the occurrence yet long before suit was filed, Zurich continued the representa-

tion of Degesch by Ralph Smith, and hired said counsel to protect its own interests without reservation. As to Zurich's belated attempt to raise the coverage defense [i.e., "late notice"], all of the facts pertinent thereto were readily apparent to Zurich as early as January 1990. Apparently, Zurich chose not to exercise any right under its policy to raise such defense as early as January of 1990, and certainly by the time it outright hired Degesch's counsel as its own in March of 1990.

■ Moreover, such action on the part of Zurich, that is hiring its insured's counsel, is tantamount to ratification [i.e., the adoption of an act done of another without authority], which adoption substitutes for prior authority.[37] Louisiana courts have stated that:

> Ratification can be inferred when the person to be bound, with full knowledge of the *material* facts, fails to repudiate the unauthorized act, and instead accepts and retains the benefits of the act.[38]

Ratification is found here because as early as January 1990, Zurich had been formally notified of the occurrence, the date of same, and all of actions taken on behalf of Degesch in investigating the possibility of claims against itself and its insurer Zurich arising therefrom. Instead of denying coverage on the basis of "late notice" or issuing any "reservation of rights", Zurich hired counsel who had been retained by Degesch from the outset, reaping the benefit of all Degesch investigative and defense efforts, opinions and reports, and expressing its concurrence with same.

The evidence is overwhelmingly to the effect that Zurich indeed benefitted directly from enlisting Ralph Smith as its own attorney in this matter. The overt act of hiring Degesch's counsel is an act conspicuously inconsistent with Zurich's later claim of "late notice" and more in the na-

34. See, Hearing on Coverage, Degesch Exh. "1".

35. Hearing on Coverage, Degesch Exh. "2".

36. Hearing on Coverage, Degesch Exh. "4".

37. *Sutton's Steel & Supply, Inc. v. Van Stavern*, 496 So.2d 1360, 1362 (La.App. 3rd Cir.1986)

[citing, *Ledoux v. Old Republic Life Insurance Co.*, 233 So.2d 731 (La.App. 3rd Cir.1979), *cert. denied*, 256 La. 372, 236 So.2d 501 (1970).

38. *Id.* [emphasis supplied].

ture of a ratification of the action by and on behalf of its insured Degesch.

This Court heartily disagrees with Zurich's argument to the effect that under LSA–R.S. 22:651, none of its actions should be deemed to constitute waiver of any of its defenses under the policy. Zurich's actions in this regard cannot be seriously characterized as mere "acknowledgement" that "the file had been received" by Zurich, and "that a preliminary investigation had been carried on by Mr. Smith." [39] Without mincing words, Zurich cannot seriously dispute that it in fact hired Mr. Smith without reservation. Such action by the insurer is not one of those acts enumerated in LSA–R.S. 22:651 and cited to this Court, as an action by an insurer which shall not be deemed to constitute a waiver of policy defenses.

### C. Public Policy and Suit Against One's Insured.

█ At the outset to clarify the facts, it is here again reiterated that after notification of a possible claim and requisite preliminary investigation, in January of 1990 without reservation, Zurich hired Degesch's counsel Ralph Smith to represent both the insured Degesch and itself, perhaps realizing that under Louisiana law coverage for defense purposes is indeed broader than indemnity coverage.[40] An insurer's duty to defend arises whenever the pleadings against the insured disclose a *possibility* of liability under the policy.[41]

This Court is of the opinion that the pleadings against Degesch and Zurich directly disclose the *possibility* of coverage under the policy at issue. Therefore, Zurich at that time consistent with its policy and Louisiana law was required to provide its insured Degesch with a defense in these consolidated proceedings. Zurich has failed to identify anything in the pleadings

against it and its insured Degesch, which *unambiguously* excludes coverage. Therefore, it owed Degesch a defense respect to the main claims.

In *Smith v. USAA Casualty Insurance Co.*, 563 So.2d 572 (La.App. 4th Cir.1990), *cert. denied*, 568 So.2d 1077 (La.1990), the appellate court granted *certiorari* following the trial court's overruling peremptory exceptions of no cause or right of action and motion for summary judgment against the insured's primary liability carrier, who settled and sought reimbursement from its insured's excess carrier. In *Smith*, several consolidated suits were brought on behalf of minor children against the Woodsides, their homeowner's insurer, USAA, and CNA, the Woodsides' umbrella excess carrier. USAA refused to defend the Woodsides based on a "recreational motor vehicle exclusion" in its policy.

The allegations against the Woodsides included liability for negligent supervision of the minors, who were operating such vehicles at the time of their injuries. In a prior decision, the appellate court affirmed the trial court's decision that USAA had a duty to defend [i.e. defense coverage under its homeowner's policy].

As is the case here, in *Smith*, prior to the trial of this matter, USAA and other insurers entered into a settlement agreement with plaintiffs, in which plaintiffs released their claims against the Woodsides and USAA, and USAA paid out its policy limits. CNA did not contribute to the settlement fund but did consent to the judgment of homologation. USAA reserved its rights to determine the coverage issue, that is whether there was indemnity coverage under its policy for the accident.

The coverage dispute in *Smith*, involved the insured's two carriers, USAA [primary homeowner's insurer] and CNA [personal umbrella excess insurer]. However, to be

---

**39.** See, Zurich's Supplemental Trial Memorandum, filed August 9, 1991, at p. 13.

**40.** Generally, the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. And the insurer's duty to defend suits brought against its insured is determined by allegations of the plaintiff's

petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969).

**41.** *Id.* See also, *Meloy v. Conoco*, 817 F.2d 275, 279 (5th Cir.1987).

entitled to reimbursement, USAA was required to take a position adverse to its own insured, that is prove the negligence of Woodsides arising out of the operation and use of the motor vehicles. Yet, the court previously held that USAA provided defense coverage under its policy. Even though in reality and actuality, the Woodsides personally stood to lose nothing monetarily on account of this battle between their insurance carriers, the court held such action by the USAA against its own insured was against public policy of the State of Louisiana.

The case before this Court is even more disturbing. Here, Zurich's suit is directly against its insured Degesch for reimbursement of settlement funds and attorney's fees, when Zurich plainly hired Degesch's counsel Ralph Smith to represent both the insured's and its own interests, without any reservation in March of 1990. Unquestionably, such action hiring insured's own counsel outright, and then seeking reimbursement of attorney's fees is against public policy. Moreover, Degesch would owe no reimbursement to anyone, short of some showing that it was liable to the parties with whom Zurich settled.

The *Smith* rule applies with even greater force in this scenario, where the insured Degesch is sued directly by its own insurer Zurich. Both Zurich and Degesch in the instant case reserved their rights upon settlement with plaintiffs.[42] Zurich reserved its right to seek reimbursement of coverage dollars paid in settlement, and Degesch reserved its rights to dispute Zurich's right to claim reimbursement claim.

By way of Supplemental Memorandum, Degesch points out that it took no part in the settlement of claims with the vessel/cargo interests. Degesch merely concurred on the record that the settlement was reasonable.[43] There is *no stipulation* of record *by counsel for Degesch* to the effect Degesch would owe the amount of the settlement funded by Zurich in the event this Court found no coverage.[44] It stands to reason under the circumstances, that if Zurich reserved its right to seek reimbursement, certainly that Degesch, its insured, fully intended to reserve its right to contest any such right on the part of its insurer. This is particularly true under the following circumstances in the case at bar: (1) Zurich was sued pursuant to the Louisiana Direct Action Statute, and in such a situation its liability directly to third party claimants remained wholly unaffected by such defenses as "late notice"; (2) "late notice" was the only coverage defense raised by Zurich, which defense was raised some months after hiring Degesch's counsel Ralph Smith to represent its own [i.e. Zurich's] interests as well; and (3) under the policy language and applicable Louisiana law, Zurich owes Degesch the duty of defense [i.e., there is defense coverage under Zurich's policy in favor of Degesch for the claims arising out of the occurrence which is the subject of this suit].

### D. *Penalties and Attorney's Fees Pursuant to LSA–R.S. 22:1220.*

LSA–R.S. 22:1220 regarding the good faith duty and claims settlement practices of insurers, is a relatively new statute

---

42. Here again it is important to note that Zurich was sued directly by plaintiff vessel and cargo interests pursuant to LSA–R.S. 22:655.

43. See, Transcript of Proceedings dated April 24th, 1991, at p. 2, [Hearing on Coverage, Zurich's Exh. "H"] wherein it is stated:
Mr. Clegg: This stipulation has been read to all Counsel, and it reads: (counsel reading) "Now comes Counsel for Seaport, Transmed, Zurich Insurance Company and AGLIC and Degesch stipulating that a settlement has been reached in the above captioned matter wherein Zurich and AGLIC will pay Seaport Shipping Co., Ltd., and Transmed Shipping, Ltd., the sum of $675,000 within seven days of

today in consideration for Seaport and Transmed dropping its claims asserted in this matter against Degesch, Zurich and AGLIC. "Zurich and AGLIC reserves their right to go forward against Degesch on the coverage issue. *Counsel for Degesch has agreed that the settlement is reasonable.*"
The Court: Let me see if I understand it. The only thing I have left is the coverage issue?
Mr. Smith: Yes, sir. (emphasis supplied).

44. See, Degesch's Supplemental Memorandum in Support of Motion to Dismiss, at p. 2, filed September 3, 1991.

enacted Part XXVI entitled "Unfair Trade Practices." The statute provides in pertinent part, as follows:

A. An insurer including but not limited to a foreign line and surplus line insurer owes to its insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damage sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

\* \* \* \* \* \*

(5) Failing to pay the amount of the claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious or without probable cause.

C. In addition to any general damages or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.... LSA–R.S. 22:1220

This provision was added by La.Acts 1190, No. 308, § 1, effective July 6, 1990 and is clearly applicable to the facts of this case as previously outlined in the Section I above entitled Findings of Fact. Between March 12, 1989 and January 2, 1990, the allision which is the subject of these proceedings was investigated by counsel at Degesch's own expense. As previously stated based on the pleadings against Degesch which fail to unambiguously exclude

coverage under Zurich's policy, Zurich in fact owed its insured Degesch the duty to defend. Counsel fees which were incurred by Degesch in defense of these claims and which to date remain unreimbursed total $15,704.18.[45]

Zurich's actions subsequent to the settlement of claims, whereby it attempted to subrogate itself against its own insured, thereby requiring Degesch its insured to prepare a defense to its [Zurich's] cross-claim and to counterclaim for amounts it expended for its own defense during the initial handling of the case. There is no question that Zurich was well aware of defense costs incurred by Degesch in the amount of $15,704.18, which to date remains unpaid though its policy provides defense coverage. Refusal to pay said sum upon demand, and worse, suit against its own insured for reimbursement of the defense costs it has paid on its insured's behalf typifies "bad faith" conduct which LSA–R.S. 22:1220 was intended to proscribe. Certainly, attempting to "hold up" one's own insured for 50% of the settlement offer and threatened denial of coverage for failure to contribute to the settlement fund also falls into that category of conduct.[46]

Pursuant to LSA–R.S. 22:1220, this Court considers an award in favor of Degesch and against Zurich in the sum of $5,000.00 in addition to ordering Zurich to reimburse $15,704.18 defense costs owed pursuant to defense coverage under its policy and adequate and satisfactory penalty in light of the facts before this Court.

The Clerk of Court is directed to enter a judgment herein in favor of the defendant Degesch America, Inc. and against Zurich Insurance Company dismissing the Cross-Claim of Zurich Insurance Company.

The Clerk of Court is further directed to enter judgment in accordance herewith, in favor of defendant Degesch America, Inc. on its Counterclaim against Zurich Insurance Company in the total amount of $20,-

---

45. See, Statements dated September 24 and October 2, 1989 [Hearing on Coverage, Degesch Exh. "16" and "17"].

46. See, Letter of Patricia Crowley on behalf of Zurich to Ralph Smith, dated March 19, 1991, at p. 3 [Hearing on Coverage, Degesch Exh. "6"].

704.18 representing the sum of reimbursement of defense costs owed by Zurich Insurance Company in the amount of $15,-704.18 plus penalties owed in the amount of $5,000.00 pursuant to LSA–R.S. 22:1220.

The Clerk of Court is further directed to enter judgment in accordance herewith to provide that Zurich Insurance Company shall bear the costs of these proceedings.