606 So.2d 72 (1992)
Robert HARRIS, et ux., Plaintiff-Appellee,
v.
Elizabeth FONTENOT, et al., Defendants-Appellants.
No. 91-410.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Jack W. Caskey, Lake Charles, for plaintiff-appellee.
David E. Marqueete, Baton Rouge, for defendants-appellants.
Before GUIDRY and LABORDE, JJ., and SALOOM [*], J. Pro Tem.
KALISTE J. SALOOM, Jr., Judge.
This suit arises out of a collision between a vehicle operated by plaintiff-appellee, Robert Harris, and a vehicle operated by *73 defendant-appellant, Elizabeth Fontenot. Robert Harris' wife, plaintiff-appellee, Gertrude Harris, was a passenger in his vehicle and both Robert and Gertrude suffered injuries. There was also some damage to the Harris vehicle. The accident was allegedly caused when Ms. Fontenot failed to yield at a stop sign.
Defendant-appellant, Certified Lloyds Plan (hereinafter Lloyds), provided liability coverage to Fontenot. Following the accident, the parties settled the property damage portion of the Harris' claim. However because no agreement was reached regarding their personal injuries, Robert and Gertrude Harris filed suit. This was on March 14, 1990.
On October 14, 1990, a settlement was reached between the parties on the personal injury claim. However, no check was forthcoming from Lloyds and on December 13, 1990, the Harris' filed a motion for penalties pursuant to LSA-R.S. 22:1220 for failure to pay a settlement within thirty days after an agreement is reduced to writing. The court rendered judgment on February 1, 1990 awarding plaintiffs the amount agreed to in settlement and penalties. Because plaintiffs did not prove special or general damages suffered from defendant's failure to settle, on the authority of LSA-R.S. 22:1220, the trial court awarded $5,000.00. It is from this judgment that defendant appeals. Their sole assignment of error is that LSA-R.S. 22:1220 does not apply to cases in litigation. After a review of the record and the applicable law, we affirm.
LSA-R.S. 22:1220 provides:
§ 1220. Good faith duty; claims settlement practices; cause of action; penalties
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.
E. This Section shall not apply to industrial and burial insurance companies, as provided for in R.S. 22:251 and 253 or to any insurer that markets under the Home Service Marketing distribution method and issues a majority of its policies on a weekly or monthly basis.
F. The Insurance Guaranty Association Fund, as provided in R.S. 22:1375 et seq., shall not be liable for any special damages awarded under the provisions of this Section.
*74 Defendant asserts that the statute only addresses conduct of an insurer before litigation commences. In support of this argument they cite the case of Premium Finance Co. Inc. v. Employers Renaissance Corp., 761 F.Supp. 450 (W.D.La. 1991). In that case the claimant sued the liability insurer of the party whom they alleged defrauded them. In addition to the primary complaint they asked for penalties under Section 1220 for failure to make a reasonable effort to settle. In response, the liability insurer filed a motion for summary judgment alleging that the statute was not intended to regulate an insurer's conduct once litigation has commenced.
The court examined the purpose of the statute and determined that it did, in fact, apply only to the pre-litigation activities of an insurer. We are compelled to disagree.
LSA-R.S. 22:1220 was added by Acts No. 308, effective July 6, 1990. It is similar to LSA-R.S. 22:658, the statute that allows an insured to sue for penalties and attorney's fees when the insurer fails in certain duties. Many of the provisions of these statutes are identical. The primary difference is that Section 1220 imposes duties on the insurer in favor of the non-insured claimant, whereas Section 658 applies only in favor of the insured. However, we believe the similarities of the statutes require us to look to Section 658 for guidance in the application of Section 1220.
We first note that nowhere in either statute is there an express distinction limiting the application to the pre-litigation conduct of the insurer. And we disagree with the court in Premium Finance that "[a]pplying the statute ... to post-litigation activities would lead to an absurd result." 761 F.Supp. at 452. While it may be true that application of the statute to post-litigation conduct would expose that litigation to collateral issues such as failure to pay a settlement, we believe that it is clear that the statute was enacted to impose a requirement of good faith and fair dealing on the insurer, requirements that are no less important after litigation has begun as before. This fact was recognized in V/O Exportkhleb v. M/V ANPA, 773 F.Supp. 832 (E.D.La.1991), where the court awarded penalties against an insurer for failure to defend its insured after suit had been filed.
Finally, we note that penalties have been imposed against insurers for their post-litigation violations under Section 658. See McDill v. Utica Mutual Insurance Co., 475 So.2d 1085 (La.1985). We see no reason to apply Section 1220 any differently.
For the reasons hereinabove assigned, the judgment of the trial court is affirmed with judicial interest from the date of the trial court judgment. Costs of appeal are to be paid by appellants.
AFFIRMED.
NOTES
[*] Honorable Kaliste J. Saloom, Jr., participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.