hWILLIAMS, Judge.
Plaintiff, Rita Easterling, appeals a judgment rendered in favor of the defendants, Monroe City School Board and its insurer, National Union Fire Insurance Company of Pittsburgh, PA (“National Union”), holding that the defendant insurer was not liable for penalties under LSA-R.S. 22:1220. We affirm.
FACTS
After having been terminated as a teacher and coach in the Monroe City School System, plaintiff was reinstated to her position. Subsequently, she sought damages for wrongful discharge from the Monroe City School Board, four school board members, and National Union Fire Insurance Company of Pittsburgh, PA, insurer of the Monroe City School System. A bifurcated bench and jury trial was held beginning in June 1994. The jury considered the issue of the liability of the individual members, and the trial judge considered the issue of the liability of the school board.
Finding the four school board members guilty of negligence and intentional infliction of emotional distress, the jury awarded plaintiff $21,250 in damages. Concerning the school board’s liability, the trial court awarded plaintiff an additional $10,000 in damages, bringing the total awarded to Easterling $31,250. The school board and the individual members were solidarily liable for the first $21,250 and the school board was liable for the additional $10,000. As the school board’s insurer, National Union was solidarily liable for the entire amount of the award. All delays for appeal of the judgment expired and the judgment became final on November 4,1994.
Subsequently, a dispute arose among the defendants concerning apportionment of the amounts to be paid to the plaintiff. Plaintiff made numerous requests to the defendant insurer for payment of the judgment. After National Union did not pay the judgment, Easterling conducted judgment debtor examinations and on December 1, 1994, she filed this action to recover penalties and attorney fees. On December 27, 1994, the insurer paid the judgment, fifty-three days after it had become final.
A hearing on plaintiff’s petition for post-judgment penalties and attorney’s fees was held on February 24, 1995. Although the court found that National Union’s failure |2to pay after the judgment became final was “arbitrary, capricious and in bad faith,” the court denied plaintiffs request for penalties and attorney fees on the following bases: (1) LSA-R.S. 22:1220 is a penal statute and must be strictly construed; since plaintiff did not allege any act enumerated in Section (B) of the statute, she is precluded from recovering penalties pursuant to the statute, and (2) a judgment is not a claim within the meaning *1281 of the statute; therefore, the statute is inapplicable to plaintiff. Plaintiff appeals the trial court’s judgment.
DISCUSSION
Plaintiff contends the trial court erred in finding that she was not entitled to penalties as provided by LSA-R.S. 22:1220. She argues that the term “claim” as used in the statute, includes final judgments. Therefore, National Union breached the affirmative duty of good faith, fair dealing and prompt handling of claims found in 1220(A) by not promptly paying her judgment once it became final. Plaintiff also contends that the acts enumerated in Section (B) of the statute are merely illustrative, and that they in no way eliminate the general duty of good faith, fair dealing and prompt handling of claims required under Section (A) of the statute. Accordingly, National Union did not have to commit one of the enumerated acts in order to be liable for penalties.
LSA-R.S. 22:1220 provides, in pertinent part:
(A) An insurer ... owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to try to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties will be liable for any damages sustained because of the breach.
There is little case law interpreting this statute. However, this court has held that when claims are brought pursuant to a specific section of this statute and the section states that the duty is owed to insureds, a third-party cannot make a claim pursuant to the section. See Levy v. Cummings, 25,475 (La.App.2d Cir. 1/19/94), 631 So.2d 55; Dier v. Hamilton, 600 So.2d 117 (La.App.2d Cir. 1992). It is thus clear that under this statute, no duty of good faith and fair dealing was owed to plaintiff as she is not an insured of National Union. Consequently, plaintiff will only be entitled to penalties if herjjfinal judgment is considered a “claim” giving rise to duties of fair and prompt adjustment and reasonable settlement efforts on the part of National Union.
Plaintiff relies on the definition of “claim” as found in Black’s Law Dictionary, 5th Edition, in support of her proposition that the term “claim,” as used in LSA-R.S. 22:1220, includes final judgments. However, in the absence of a controlling precedent, a court will define a word used in a statute upon the court’s analysis of the statute in its contextual setting and as related to the factual situation before the court. State v. Getty, 20 So.2d 546 (La.1944). When interpreting a word’s meaning, its proper connotation does not depend upon an isolated definition attributable to it; one must also consider the context in which the word is used. Liter v. City of Baton Rouge, 245 So.2d 398 (La. 1971). Therefore, this court is compelled to look further than Black’s Law Dictionary to define “claim.”
To decide the context in which a word is used, an appellate court may use the title of the statute for assistance. Louisiana Associated General Contractors, Inc. v. Calca-sieu Parish School Board, 586 So.2d 1354 (La.1991); Mississippi Chemical Express, Inc. v. Glover, 467 So.2d 1261 (LaA.pp.2d Cir.1985). The title of LSA-R.S. 22:1220 is, “Good Faith Duty; Claims Settlement Practices; Cause of Action; Penalties.” Judging from the title, the purpose of this statute is obviously to address the various practices used by insurers in settling claims. The relevant question then becomes, “What does it mean to “settle” a claim within the context of the insurance code?”
The plaintiff did not direct this court’s attention to any cases that address whether “settling” a claim means paying a judgment. In our survey of the jurisprudence generated pursuant to LSA-R.S. 22:1220, we find no cases in which this statute has been used to enforce a judgment or to penalize an insurer for nonpayment of a final judgment.[1]
|4In our review of the other sections of the Insurance Code, we find that the term *1282 “claim” is not commonly used within the code to mean final judgment. An example is LSA-R.S. 22:992, which provides that a foreign insurer authorized to do business in Louisiana shall have a claims office or a claims adjustor in this state to process claims pursuant to certain types of insurance policies. The stated purpose of a claims office or claims adjustor indicates that “claim(s),” as used in this statute does not mean a final judgment, because no action on a final judgment can be taken pursuant to any kind of policy of insurance.
LSA-R.S. 22:658 is another statute that describes certain duties of insurers to insureds and third parties. It is very closely related to LSA-R.S. 22:1220 because the breach of certain duties under this statute will subject an insurer to the penalties listed in LSA-R.S. 22:1220. See LSA-R.S. 22:658(A)(3).
Under Subsection (A) of the statute, various time periods are designated in which insurers are to handle the payment of claims, offers to settle claims, etc. The payment of claims is to take place in some instances thirty days after proof of loss, and in other instances, thirty days after written agreement of settlement. These payment provisions clearly show that claim does not mean judgment. This is because proof of loss is not necessary to enforce payment of a judgment. In the present case and others where judgments are rendered, the proof of loss came sometime prior to the rendition of judgment. A judgment also does not exist after an agreement between the parties. If a judgment has been rendered, the parties never completely reached an agreement. The judgment, as in this case, is the resolution of the parties’ disagreement. Finally the statute provides for an insurer to make written offers of settlement. A written offer to pay a judgment is not necessary, since as it is the law between the parties, the judgment-debtor is obligated to pay a judgment. Steber v. Steber, 346 So.2d 315 (La.App. 4th
Cir.1977). I5AS seen from the analysis of this statute, which is very similar to LSA-R.S. 22:1220, the term “claim” as used in the insurance context simply does not mean judgment.
Our reading of LSA-R.S. 22:1220 and other insurance statutes clearly establishes that “claim” does not refer to a final judgment within the context of insurance. Therefore, LSA-R.S. 22:1220 is inapplicable to plaintiff, and she is not entitled to penalties.
Plaintiff also contends that the trial court erred in concluding that LSA-R.S. 22:1220 must be strictly construed, and therefore, the only deeds of misconduct for which penalties could be assessed against a defendant are those listed in Section (B) of the statute. Since we have determined that the statute is inapplicable to the plaintiff, we find it unnecessary to address this argument.
CONCLUSION
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellant, Rita Easterling.
AFFIRMED.

. Defazio v. City of Baton Rouge, 625 So.2d 733 (La.App. 1st Cir. 1993), which was not cited by the plaintiff, involved enforcement of a stipulated judgment. Since, however, a stipulated judgment is a determination of rights to which the parties themselves agree, this court views such a judgment as being substantially different from the one we are presently considering. Therefore,
*1282 Defazio is considered to have no bearing on the present case.
Harris v. Fontenot, 606 So.2d 72 (La.App. 3d Cir.1992), which was also not cited by plaintiff, held that LSA-R.S. 22:1220 applies to post litigation conduct. Id. at 74. However, that case involved payment of a settlement that was reached prior to the conclusion of litigation and rendering of judgment. Therefore, that case is also substantially different from the present case and is considered to have no bearing upon our decision.