h WILLIAMS, Judge.
In this worker’s compensation action, the defendant, Bewley’s Furniture Company, appeals a worker’s compensation hearing officer’s (“WCHO”) judgment awarding claimant, Bobby H. Powell, supplemental earnings benefits and past due total temporary disability benefits and denying defendant’s request for a credit for the overpayment of benefits. For the following reasons, we affirm in part and reverse in part.
FACTS
The claimant, Bobby Powell, worked for the defendant for several years as a furniture salesman. Defendant paid claimant on a straight commission basis. It is undisputed that on or about January 11, 1992, claimant injured his right knee in an on-the-job accident. Dr. Anglin, claimant’s treating physician performed knee surgery on February 3,1992. Beginning on that date, defendant paid claimant temporary total disability benefits of $241.12 per week. At trial, Powell testified that he periodically attempted to return to work beginning in April 1992, but each time he attempted to work, the pain from his injury would become unbearable and he would have to stop working again after several days. This intermittent work pattern continued throughout the remainder of claimant’s employment by the defendant. Claimant received wages every month from the time of his accident until he left defendant’s employ.
On January 8, 1993, defendant’s company doctor, Dr. Angle, treated claimant and recommended that he return to work without restrictions. However, claimant testified that he continued to suffer pain due to his injury after that date. Subsequently, claimant saw Dr. Waddell, an orthopedist, based on Dr. Angle’s recommendation. Dr. Wad-dell treated claimant for several weeks, and on March 15, 1993, released claimant to return to work for four hours per day for one week, then to full duty thereafter. Defendant terminated claimant’s benefits on March 1221, 1993, based on the insurance adjuster’s discovery that claimant had worked intermittently since April 1992 and based on Dr. Waddell’s release of claimant to return to work. Claimant left the defendant’s employ on March 21,1993.
In March 1994, claimant filed a worker’s compensation claim asserting he was entitled to recover for underpayment of past benefits. Claimant also asserted that he was entitled to supplemental earnings benefits because his knee injury continued to cause an inability to earn wages equal to the amount of his pre-injury wages. Defendant answered claimant’s claim and asserted that it was entitled to recover for the overpayment of benefits. After a hearing, the WCHO entered a judgment awarding claimant past due temporary total disability benefits and supplemental earnings benefits. Defendant appeals.
DISCUSSION

Entitlement to Supplemental Earnings Benefits

Bewley’s contends the WCHO was clearly wrong in finding that the claimant was entitled to supplemental earnings benefits. This contention lacks merit.
The factual findings of a worker’s compensation hearing officer may not be set aside unless said findings are manifestly erroneous or clearly wrong. The appellate court must give great weight to the trier’s factual conclusion, reasonable evaluations of credibility, and reasonable inferences of fact. Allen v. Misco Paper, 27,146 (La.App.2d Cir. 8/23/95), 660 So.2d 175. When there are two permissible views of the evidence, the trier of fact’s choice between the two cannot be manifestly erroneous or clearly wrong. Allen v. Misco Paper, supra.
LSA-R.S. 23:1221(3) sets forth the criteria for the payment of supplemental earnings benefits:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments: ...
|⅞(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at the time of injury, supplemental earnings benefits equal to sixty-six and two thirds percent of *1288 the difference between the average monthly wages at the time of injury and average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis....
The claimant in a worker’s compensation case must prove his entitlement to supplemental earnings benefits by a preponderance of the evidence. Davis v. Jones Baldwin Music Company, 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991). To rebut the claimant’s proof, the employer must prove that the claimant is physically able to do work that was available to him in the claimant’s or employer’s reasonable geographic area. LSA-R.S. 23:1221(3)(c)(I); Davis v. Jones Baldwin Music Company, supra.
In the present ease, the hearing officer could have found by a preponderance of the evidence that claimant could not earn ninety percent of his pre-accident wages due to his injury. The claimant testified that a furniture salesman’s job involves moving furniture to show it to customers, a function that he could not do at the time of trial because of his knee injury. Claimant testified that because of his inability to move furniture, he had to quit several jobs in the furniture sales business after he left defendant’s employ, because those jobs required him to move furniture. According to claimant, at the time of trial, he was working at a clearance center showroom because it was the only place he could work as a furniture salesman without being required to move furniture. He asserts that with this type of job, he was unable to earn ninety percent of his pre-injury wages.
Un addition to the testimony concerning the effects of his injury on his job situation, claimant and his sister, Betty Delaney, both testified that at the time of trial, claimant was still in pain due to his injury. Further, leisure activities in which plaintiff could engage prior to his injury were curtailed due to injury-related pain at the time of trial. Finally, claimant presented pay stubs that reflected that the wages he received from the other jobs he obtained after he left defendant’s employ were less than 90 percent of his pre-injury wages.
After this testimony, the burden shifted to the defendant to prove that claimant could earn 90 percent of his pre-injury wages. The primary evidence presented by the defendant to rebut claimant’s evidence was the medical evidence showing that claimant’s treating physicians had released him to return to work. Defendant also asserted that claimant was working thirty-eight to forty-two hours per week as a furniture salesman at the time of trial, and that he has not seen a physician concerning his injury since the treating physicians of record released him to return to work. However, defendant did not present evidence that there were other jobs in claimant’s geographic area in which he could have earned 90 percent or more of his pre-injury wages.
It is clear from the record that two permissible views of the evidence were presented to the trier of fact, and that the WCHO chose to accept the claimant’s evidence. Such a choice is not manifestly erroneous, especially since defendant presented no evidence of other jobs that claimant could have done to earn ninety per cent of his pre-injury wages. Thus, we will not set aside the WCHO’s determination that claimant is entitled to supplemental earnings benefits.

Calculation of Supplemental Earnings Benefits

The defendant next contends that the WCHO erred in determining that the Isdaimant worked five days per week to calculate his pre-injury wages[1]. This argument lacks merit.
LSA-R.S. 23:1021(10) provides that the word “wages” means the average weekly *1289 wage at the time of the accident. LSA-R.S. 23:1021(10)(d) states that if an employee is paid on a commission basis, his average weekly wages are equal to his gross earnings from the employer for the twenty-six weeks preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four.
LSA-R.S. 23:1221(3)(a) provides that the average monthly wages, which is the standard to be used monthly in determining a claimant’s eligibility for supplemental earnings benefits, are four and three tenths times the average weekly wages resulting from the calculations provided for in R.S. 23:1021(10). Thus, the actual number of days a claimant worked in the twenty-six weeks prior to his accident must be figured to determine whether a claimant is entitled to supplemental earnings benefits, and if so, the amount he is entitled to.
In the present case, neither party presented documentary evidence to show the actual number of days claimant worked in the twenty-six-week period prior to his accident. The insurance claims adjuster, Melissa Meyers, testified that Bewley’s advised her that claimant worked six days every other week and seven days eveiy other week, and thus, she determined that claimant worked an average of 6.5 days per week. Bewley’s bookkeeper, Constance Dress, testified that Bew-ley’s scheduled salesmen to work six days per week, and that they sometimes worked seven if there was a holiday or big sale. On cross examination, however, Dress testified that she had no way of knowing if a salesman came to work unless 16¾ sale was recorded in his name or she talked to him. She testified that she had no way of knowing what number of days claimant worked. Claimant testified that he worked five days per week most of the time, and he occasionally worked six days per week if there was a holiday or sale. Based on the testimony, we cannot say the WCHO was clearly wrong in calculating claimant’s supplemental earnings benefits using five days per week.

Employer’s Claim for Reimbursement of Benefits it Overpaid

The defendant also contends that it was error for the WCHO to deny its claim for reimbursement of benefits overpaid to the claimant. Defendant argues that because claimant received wages in every month after his accident, he was entitled to supplemental earnings benefits based on the income he was receiving and he was not entitled to the temporary total disability benefits paid. Claimant argues that the wages he received were past due commissions and thus, he was not “earning” money within the meaning of R.S. 23:1221(3) during the time defendant paid him temporary total disability benefits. We find that defendant is entitled to reimbursement for the overpayment of benefits.
An employer is entitled to reimbursement for benefits it has erroneously paid an employee if the employee was not due those benefits when they were paid. LSA-R.S. 23:1206; Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2d Cir.1989), (on rehearing).
When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. Art. 12; St. Landry Parish Police Jury v. Zerangue, 95-0877 (La.11/27/95); 664 So.2d 388. In absence of a controlling precedent, a court will define a word in a statute upon the court’s analysis of the statute in its contextual setting and as related to the factual situation before the court. Easterling v. Monroe City School Board, 27,795 (La.App.2d Cir. 1/24/96), 666 So.2d 1279.
|7In the present case, the statute itself defines the word “earn.” LSA-R.S. 23: 1221(3)(b) clarifies LSA-R.S. 23:1221(3)(a) by stating that the wages the employee is able to “earn” in any month shall not be less than the sums actually received by the employee. Since the wages the employee “earns” or is able to “earn” are the amount he receives, the claimant’s wages are considered earned when he receives them. Because claimant received wages in virtually every month after his accident, those wages are to be the basis for his worker’s compensation benefits. Thus, defendant is due a credit for overpayment of benefits.
*1290 The method for calculating the rate to be used monthly in determining Powell’s eligibility for supplemental earnings benefits has been set forth earlier in this opinion. See LSA-R.S. 23:1221(3)(a), supra. The record reflects that claimant’s gross earnings for the twenty-six-week period preceding the accident were $15,281.19, and that based on claimant’s testimony he worked five days per week, the actual number of days he worked was 130. Using these numbers in the calculations specified in LSA-R.S. 23:1021(10)(d), Powell’s average weekly wage is $470.19. That number multiplied by 4.3 yields an average monthly wage of $2,021.82. Ninety percent of $2,021.82 is $1,819.64. Thus, in any month of the relevant period that claimant did not earn this amount, he was entitled to supplemental earnings benefits.
Claimant was injured in early January 1992. Wage records submitted into evidence show that claimant received less than ninety per cent of his salary in every month from the month of his injury until the last month he was employed by the defendant except the months of September and November 1992. Thus, from January 1992 to February 1993, claimant was entitled to benefits in every month except September and November 1992. According to our calculations, the total in ^supplemental earnings benefits to which claimant was entitled was $7,788.00.[2] There is no documentary evidence in the record to show the total amount in benefits defendant paid claimant. However, defendant’s uneon-troverted testimony is that it paid defendant $241.12 per week beginning the week of February 3, 1992 through the week of March 21, 1993. This totals fifty-six weeks. Therefore, according to our calculations, defendant paid claimant a total of $13,502.72. Therefore, defendant is entitled to a credit of $5,714.72, to be deducted from the total amount it must pay claimant in supplemental earnings benefits.
Finally, defendant assigns as error the WCHO’s calculation of the rate at which claimant was to be paid temporary total disability benefits. Because we have decided that claimant was eligible for supplemental earnings benefits, we decline to address that assignment and we reverse the portion of the judgment awarding past due temporary total disability benefits.
CONCLUSION
The portion of the judgment awarding claimant supplemental earnings benefits is affirmed. The portion of the judgment denying defendant a credit for | goverpayment of benefits and awarding claimant past due temporary total disability benefits is reversed. Costs are assessed equally to claimant and defendant.
AFFIRMED IN PART; REVERSED IN PART.

. Along with this assignment of error, defendant also assigns as error the WCHO’s failure to consider claimant's post-injury income when determining the amount of his supplemental earnings benefits. We address that assignment in our discussion of defendant’s claim for a credit.

. Average monthly wage minus wage actually received; Difference multiplied by 4.3
January 1992: $2,021.82--$1659.33 = = $ 362.49 $ 362.49 X .667 241.78
February 1992: $2,021.82- -$ 848.60 = = $1,173.22 $1,173.22 X .667 782.54
March 1992: $2,021.82- -$ 983.01 = = $1,038.81 $1,038.81 x .667 692.89
April 1992: $2,021.82- -$ 684.82 = = $1,337.00 $1,337.00 x .667 891.78
May 1992: $2,021.82--$1335.05 = = $ 686.77 $ 686.77 x .667 = 458.08
June 1992: $2,021.82- -$ 900.09 = = $1,121.73 $1,121.73 x .667 748.19
July 1992: $2,021.82-■$1396.11 = = $ 625.71 $ 625.71 X .667 = 417.35
August 1992: $2,021.82- -$ 800.10 = = $1,221.72 $1,221.72 x .667 814.89
October 1992: $2,021.82-•$1283.25 = = $ 738.57 $ 738.57 X .667 = 494.84
December 1992: $2,021.82-$1640.90= = $ 380.92 $ 380.92 X .667 = 254.07
January 1993: $2,021.82-$1669.65 = = $ 352.17 $ 352.17 X .667.= 234.90
February 1993: $2,021.82-$1409.92 = = $ 611.90 $ 611.90 X .667 = $ 408.14
March 1993: $2,021.82- •$ 0.00 = $2,021.82 $2,021.82 X .667 $1,348.55
$7,788.00