h CARAWAY, J.
In this worker’s compensation case, the employee disputes the employer’s termination of supplemental earnings benefits (SEBs). Following the employee’s surgery and his refusal to return to a new job offered by the employer, the employee ob *1226 tained a job elsewhere paying considerably less than his pre-injury wages. Finding that the position offered by the employer would have alleviated the need for SEBs, we affirm the ruling of the worker’s compensation judge.

Facts

Michael Bertsch was a warehouse manager of South Gateway Tire Company (“Gateway”) earning $2200 per month in salary. On February 7, 1995, while working in Gateway’s warehouse, he suffered a disc injury and an aggravation of a prior back condition. On February 15, 1995, Bertsch was examined by Dr. Jorge Martinez. Dr. Martinez had also treated Bertsch for his earlier back injury and surgery in 1988. Dr. Martinez suspected Bertsch may have “recurrent disk material” or an “impingement on the nerve root at a level of his lower back.” After an MRI, Dr. Martinez concluded that Bertsch suffered from a herniated disc at L4-5. Although Bertsch continued to work for several months, surgery was performed in August to repair the ruptured disk that was determined to be the result of the February, work-related injury.
Both before and after Bertsch’s surgery, medical management and rehabilitative services were provided to Bertsch. After the surgery, Bertsch began receiving maximum SEBs. On October 17, a rehabilitation nurse met with Carl Bullard, the general manager of Gateway, to discuss Bertsch’s eventual return to work. Concerned about Bertsch’s physical ability after the surgery, Bullard discussed with the nurse the possibility of assigning Bertsch a light duty job driving a delivery truck between retail outlets in the Shreveport area.
|?On December 11, 1995, Bertsch was released by Dr. Martinez to return to light duty work. On that day, thinking he was to return to his same, position, Bertsch worked in the Gateway warehouse and avoided any heavy duty lifting. Upon Bul-lard’s discovery of Bertsch’s return, he called Bertsch into a conference at the conclusion of the workday to discuss Bertsch’s job status. Bullard then informed Bertsch that his former position had been filled and that he would be assigned work as a Gateway truck driver that would require him to drive a delivery route two days a week. The other three days, Bertsch would perform work in the Gateway warehouse. Bertsch was to begin training as a driver and to obtain his commercial driver’s license.
Bertsch responded negatively to Bul-lard’s offer. Bertsch testified that he believed he could not physically perform the tasks associated with a long truck route and the loading and unloading of the truck. Bullard testified that he offered a truck driver training position and that Gateway would accommodate Bertsch’s light duty work restrictions to allow Bertsch time for continued recovery. Bullard testified that Bertsch simply refused to consider the truck driving position regardless of the degree of its physical demands. Following this December 11 discussion, Bertsch did not return to work for Gateway.
On April 26, 1996, Bertsch was released from Dr. Martinez’s care with a permanent restriction to medium-duty work level for eight hours a day. Medium-duty work would allow for lifting of no greater than fifty pounds. In July 1997, Bertsch performed work for his brother-in-law driving a truck. However, this was not reported to Gateway. Bertsch continued to receive SEB payments after December 1995 until July 1997, at which time the payments were terminated. In November 1997, Bertsch became employed by Horseshoe Casino as a security guard for wages of $7.50 per hour.
13Bertsch filed this claim contesting the termination of SEBs. The matter was tried before a worker’s compensation judge (“WCJ”) and a judgment was rendered against Bertsch. After finding a work-related injury, the WCJ determined that Bertsch was released in April 1996 with the same limitations and pre-accident level of wage earning capacity that Bertsch had had after his initial back surgery in 1988. *1227 The WCJ reasoned that Bertsch “went into this accident or aggravation disabled, ... and when that disability returned to the same level as it was before, he no longer can recover benefits.” The hearing officer further determined that Gateway properly offered a job to Bertsch and that he refused the job. Bertsch appeals the termination of SEBs.

Discussion

“The purpose of S.E.Bs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.” Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 2S:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman v. Poulan/Weed Eater, 93-1530, (La.1/14/94), 630 So.2d 733. “Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker’s compensation is to be liberally construed in favor of coverage.” Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). The WCJ’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. See, Harvey v. BE & K Const, 30,825 (La.App.2d Cir.8/19/98), 716 So.2d 514; Powell v. Bewley’s Furniture Co., 28,794 (La.App.2d Cir.10/30/96), 682 So.2d 1286.
Once the employee’s burden is met, the burden shifts to the employer who, in order to reduce or defeat the employee’s claim for SEBs, must prove job availability, as follows:
(1)the existence of a suitable job within claimant’s physical capabilities and within claimant’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with claimant’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job’s existence.
Banks v. Industrial Roofing & Sheet Metal Works, Inc. 96-2840 (La.7/1/97), 696 So.2d 551. For purposes of the SEB calculation, and particularly pertinent in this case, Section 1221(3)(c)(i) of the Worker’s Compensation Act (“Act”) specifically states that if the employee is earning less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment which he was physically able to perform and which he was offered by the employer.
Bertsch contests the WCJ’s legal analysis in denying SEBs. While Bertsch’s physical limitations and earning capacity following his 1988 back surgery were the same as his limitations and earning capacity after Dr. Martinez’s release in April 1996, Bertsch argues that the WCJ’s emphasis upon that similarity ignores the test for the calculation of SEBs set forth in the Act. The calculation for SEBs is measured by the difference between earnings that the worker is able to obtain following an injury and the pre-injury wage, and Bertsch argues that the |swage he can now obtain is far less than the salary level he had achieved with Gateway.
In response to these contentions, we accept that the evidence tended to prove that for the general market of jobs available to him, Bertsch would be unable to earn ninety percent or more of his $2200 per month former salary. Bertsch has a high school education with additional training as a sheet metal worker, a job he could no longer perform after his 1988 back surgery. The promotions he obtained while working with Gateway had increased his *1228 earnings to a level significantly in excess of the earnings he would obtain if required to search for new employment. Nevertheless, the WCJ’s emphasis on Bertsch’s recovery to the same medium-duty work status under which he labored before the accident is significant to this SEB controversy in view of Gateway’s offer to allow Bertsch to return to work and Section 1221(3)(e)(i).
In this case, Gateway attempted to meet its burden of proving job availability by showing the existence of a suitable job within Bertsch’s physical capabilities and which happened to be a position with Gateway where Bertsch could be expected to earn a much greater wage due to his experience with the company. Bertsch’s refusal to accept that job required the WCJ to factually determine (i) whether Bertsch was physically able to perform the job, (ii) whether the job was suited to Bertsch’s training, skills and experience and (in) whether the amount of wages Bertsch could be expected to earn in the new position would reduce or eliminate SEBs. Banks, supra and La. R.S. 23:1221(3)(c)(i); see also La. R.S. 23:1226.
In addition to determining that Bertsch regained his same physical capacity by April 1996, the WCJ found that Gateway’s offer of a related job position was made in good faith with a willingness to accommodate Bertsch initially as he ^regained his strength and learned the job of delivering Gateway’s products. Bertsch’s former job had been filled during his four to five month absence. Nevertheless, his new position would have allowed him on three days each week to perform warehouse duties which were similar to those of his former job. According to Bullard’s description of the job, the medium-duty work restriction could be met in the performance of the truck driver/warehouse position. On December 11, 1995, Bertsch returned to work anxious to resume his warehouse managerial position; yet at trial he insisted that he was unable to perform the Gateway work. The WCJ’s emphasis that Bertsch’s surgery had restored him to his same physical capacity was important for the determination that the new position rejected by Bertsch was a job which was within his physical capabilities. From our review of the job description of the truck driver/warehouse position and Bullard’s testimony regarding his willingness to accommodate Bertsch’s work restrictions, we find that the WCJ could reasonably conclude that the offered position was within Bertsch’s physical capabilities and was suited to his training and skills.
As to the wages that Bertsch could be expected to earn in the Gateway position, the record indicates that Bullard expressed concern prior to Bertsch’s December 11 return regarding Gateway’s ability to re-employ Bertsch at his previous salary level. At the December 11 conference between Bertsch and Bullard, the issue of salary was apparently never decided before Bertsch’s rejection of the new position. The amount of salary therefore is left open to speculation in this case due to Bertsch’s actions. Under these circumstances, given that Bertsch received one- and-one-half years of SEBs following Gateway’s offer to return him to work and in light of Bertsch’s value to the employer as an experienced former manager, we conclude that it was more probable than not that 17the offered position would have provided Bertsch an ability to restore his earnings to at least 90% of his former salary by the time that SEBs were terminated.
The WCJ’s ruling was clearly a “facts and circumstances” determination that the employer met its burden of proof in this instance concerning its willingness to accommodate the employee with a modified position and on-the-job training that would respect his physical limitations and restore him to his former wage level while at the same time reducing the employer’s SEB obligation and providing the employer with the continued services of a trained employee. In her oral ruling, without citing verbatim the provisions of the Act, the WCJ properly considered the SEB calculation *1229 and the employer’s rehabilitation services obligation under Section 1226 which lists as its first priorities the return of the employee to the same or modified position of employment.
The WCJ’s fact rulings being subject to manifest error deference, we affirm the decision denying further SEB payments. Costs are assessed to appellant.
AFFIRMED.