836 So.2d 476 (2002)
Roger Paul CARIGNAN
v.
LOUISIANA COMPRESSOR MAINTENANCE COMPANY and Louisiana Workers' Compensation Corporation.
No. 2002 CA 0180.
Court of Appeal of Louisiana, First Circuit.
December 30, 2002.
*478 Frank A. Bruno, New Orleans, for Plaintiff-Appellee Roger Paul Carignan.
Ashley Ragusa, Johnson, Stiltner & Rahman, Baton Rouge, for Defendants-Appellants Louisiana Compressor Maintenance Company and Louisiana Workers' Compensation Corporation.
Before: PARRO, JAMES, and PATTERSON, JJ.[1]
PARRO, J.
In this workers' compensation case, an employer appeals the judgment of the Office of Workers' Compensation Administration granting its former employee's claim for continued supplemental earnings benefits (SEB).[2] For the following reasons, the judgment is amended and, as amended, affirmed.

Factual Background and Procedural History
On January 11, 2000, Roger Carignan (Carignan) was working in the course and scope of his employment as a mechanic's helper with Louisiana Compressor Maintenance Company (LCM) when he sustained a crushing injury to the thumb on his right hand.[3] Two days after the accident, Carignan returned to work with instructions from his treating physician that he be limited to work involving the use of one arm. Based on this restriction, he was assigned to work in the tool room. While working in the tool room, Carignan's pay was based on the same hourly rate that he earned as a mechanic's helper, $11.25 per hour. As a tool room worker, Carignan had the opportunity to work at least 40 hours per week.[4] Check stubs reflect that Carignan worked less than 40 hours during some weeks. Carignan acknowledged that he sometimes left work early on Fridays so that he could get to his home in Carriere, Mississippi, sooner. Carignan complained to his supervisors that the job in the tool room required that he lift tools with both hands in violation of the work restrictions assigned by his treating physician. He was authorized to seek the assistance of the person who requested tools in retrieving the items. Additionally, Shawn Cannon (Cannon), LCM's human resources manager since April 2000, was informed by Carignan *479 that the men were giving him a hard time and accusing him of not working up to his capability. Cannon testified that he assured Carignan that he was being productive and that he had a job for as long as he was capable of performing the required duties of a tool room clerk. Nonetheless, Cannon confirmed that his assignment to the tool room was temporary and would end when his help was no longer needed there or Carignan was released to full duty and could return to his job as a mechanic's helper.
On Friday, May 5, 2000, after being treated conservatively for four months, surgery was performed on his right thumb. Carignan testified that he returned to work on the following Monday.[5] In June 2000, while Carignan was contemplating leaving LCM, Cannon advised Carignan that LCM was in the process of finalizing a contract with an offshore customer. The contract would require, among other employees, two maintenance coordinators. Cannon informed Carignan that he was being considered for one of the maintenance coordinator positions, which was to pay $20 per hour, because of his computer skills and maintenance background. Carignan visited the job site and advised Cannon that he was interested in the job. Admittedly, the maintenance coordinator position, which was of a sedentary nature involving mostly inside computer work scheduling maintenance for compressors used in the oilfield, was within his physical capabilities. Carignan was notified that he would be given one of the positions as soon as the contract was finalized. Cannon acknowledged that at the time the job was offered to Carignan, LCM was not sure that negotiations would result in it being awarded the contract. Nonetheless, based on negotiations that had taken place thus far, LCM had a good feeling that it would be granted the contract.
Carignan's attendance card indicates that he last reported to work in the tool room on Thursday, July 20, 2000. However, his check stub reveals that he was paid for 37.25 hours of regular time during the week of July 22 to July 28, as well as five hours of regular time for the July 29 through August 4 pay period. According to Carignan, he decided to quit his job at LCM because he thought that he had no future with LCM and that it was time to find something else. Cannon testified that Carignan simply stopped showing up for work, without notice.
By mid August 2000, the contract was finalized, and LCM began work under the contract. One of the maintenance coordinators for this job began working on August 19, 2000, earning no less than $4,700 per month at a rate of $18 per hour. Cannon testified that Carignan would have been given the other position of maintenance coordinator for this job had he been employed with LCM when the contract was finalized. The job that would have been given to Carignan was not filled until September 2000. Cannon explained that although LCM's contract lasted for only one year, another comparable maintenance coordinator position became available soon afterwards.
Carignan held several jobs after he quit his job at LCM. He worked for the City of Picayune for approximately two months, beginning in October 2000, as a pipe fitter at a rate of $6.65 per hour. He next worked as a mechanic with Coles Rental World (Coles) for approximately six *480 months, earning $8.50 per hour doing primarily small engine repair work. Upon leaving Coles on June 23, 2001, he went to work for Thompson Packers (Thompson) as a night manager for an annual salary of $30,000 and worked there for three months. Because the number of hours that he was required to work exceeded company representations and because of the pain experienced from working in a cold warehouse, Carignan quit his job with Thompson a few weeks before trial and began working as a general laborer for Slidell Landfill on September 4, 2001, earning $8 per hour.
After considering this evidence, the workers' compensation judge (WCJ) awarded SEB in favor of Carignan for the period of January 11, 2000, to July 29, 2000, during which period Carignan was assigned to work in the tool room. Additionally, the WCJ ordered that Carignan was entitled to continued SEB, penalties, and attorney fees. In this appeal, LCM challenges only the WCJ's determination relative to Carignan's entitlement to SEB after July 29, 2000. Carignan filed an answer to LCM's appeal seeking additional attorney fees and penalties for the work on appeal.

Applicable Law and Standard of Review
The particular statute at issue in the instant case is LSA-R.S. 23:1221(3), the SEB provision. The threshold prerequisite to recovery of SEB, as set forth in subparagraph (3)(a) of that statute, is that the employee's injury results in his inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989); Payne v. Country Pride Foods, Ltd., 525 So.2d 106, 109 (La.App. 3rd Cir. 1988). The injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. Daigle, 545 So.2d at 1007. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation law is to be liberally construed in favor of coverage. Daigle, 545 So.2d at 1007. In determining if an injured employee has made a prima facie case of entitlement to SEB, the trial court may and should take into account all those factors which might bear on the employee's ability to earn a wage. Daigle, 545 So.2d at 1007. It is not until the employee successfully bears his burden of proving his disability and resultant inability to earn at least 90 percent of his pre-injury wages that the burden shifts to the employer who, in order to defeat the employee's claim for SEB or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered or available to the employee in his or the employer's community or reasonable geographic region. See Daigle, 545 So.2d at 1008-1009.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Banks, 696 So.2d at 556. Thus, if the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, 696 So.2d at 556.

*481 Earning Ability

Because of the injury to his right thumb, Carignan was no longer capable at the time of trial of working as a mechanic's helper for LCM; however, the record establishes that Carignan was physically capable of performing the tool room job when considering the accommodations made by LCM. Admittedly, his assignment to the tool room was of a temporary nature. Nonetheless, there is no evidence in the record that his placement there would have ended at a given time, as Carignan could not return to his former position, and we do not know how long additional help was needed in the tool room.
For purposes of the SEB calculation, LSA-R.S. 23:1221(3)(c)(i) specifically states that if the employee is earning less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment which he was physically able to perform and which he was offered by the employer. Bertsch v. South Gateway Tire, 32,167 (La.App. 2nd Cir.8/18/99), 738 So.2d 1225, 1227. Accordingly, we conclude that the amount of SEB to which Carignan may be entitled after July 29, 2000, should be based on nothing less than the average monthly wages he was able to earn while working at least a 40 hour week in the tool room at LCM.
Although he received wages while working in the tool room based on the same hourly rate paid before the injury, Carignan's earnings were significantly less because he was no longer able to work as many overtime hours, thus rendering him unable to earn wages equal to 90 percent or more of the wages he was earning at the time of the injury. This finding is not disputed by the parties. Accordingly, the WCJ's obvious finding that Carignan met his burden of proving by a preponderance of the evidence that his thumb injury resulted in his inability to earn wages equal to 90 percent or more of the wages he was earning at the time of the injury is reasonably supported by the record and is not manifestly erroneous.

Job Offering or Availability
Based on Carignan's satisfactory proof of his inability to earn at least 90 percent of his pre-injury wages, the burden shifted to LCM who, in order to reduce or defeat Carignan's claim for SEB, must prove job availability by establishing by competent evidence, at a minimum, the following:
(1) the existence of a suitable job within Carignan's physical capabilities and within his or LCM's community or reasonable geographic region;
(2) the amount of wages that an employee with Carignan's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that Carignan received notification of the job's existence.
See Banks, 696 So.2d at 557.
Relative to the position of maintenance coordinator, Carignan conceded that he was physically able to perform the job and that the job was suited to his training, skills, and experience. The wage history for that position was $18 per hour rather than the $20 per hour that was conditionally offered to Carignan, and this history shows that the amount of wages Carignan could have expected to earn in the new position would have eliminated his entitlement to SEB. Therefore, the first and second prongs of the job availability test set forth above were met in this case.
*482 We now examine whether the third prong was established. The third prong of the job availability test can be satisfied by the employer's showing that an offer of employment was made in good faith with a willingness to accommodate the employee. See Bertsch, 738 So.2d at 1228.
It is undisputed that LCM conditionally offered Carignan one of the maintenance coordinator positions. This offer was admittedly made prior to the time it actually became available. Thus, Carignan urges this court to ignore the fact that LCM offered this position to Carignan in light of the fact that the job was not available at the time that it was offered.
LCM contends that the offered position was not speculative and that LCM had good reason to believe that it would be available soon. In fact, the contract was awarded to LCM within a few weeks of Carignan's departure from LCM. Furthermore, Cannon testified that had he stayed in LCM's employment, Carignan would have been able to begin his new position in mid-August 2000. Accordingly, LCM maintains that Carignan's inability to earn at least 90 percent of his pre-injury wages was caused by his abandonment of his employment with LCM, not because of his injury. On the other hand, Carignan argues that the promotion was speculative in that it was contingent on LCM being awarded the contract and that it was questionable whether LCM would have honored its offer after obtaining the contract. Furthermore, Carignan argues it is irrelevant whether he was employed by LCM when the job became available; it is the employer who bears the burden of proving job availability. The WCJ's determinations relative to these competing positions are dependent on his findings of fact.
It is undisputed that Cannon was aware that Carignan wanted to quit his job with LCM and that at some point in time, Cannon suggested that Carignan take a week off from work to think about his decision to quit. Carignan said he took such time off beginning on July 21, 2000, ultimately resulting in his non-return. On the other hand, Cannon testified that this discussion occurred during the month of June, prompting LCM to consider him for the maintenance coordinator job. However, Carignan's recount of the events is supported by LCM's record of his attendance. According to LCM's record, the only absences Carignan had during the month of June were on Monday, June 19 and Friday, June 30.
Carignan testified that, upon his departure, he informed Cannon that he was interested in a maintenance coordinator position. According to Carignan, he asked Cannon to call him once it became available. During that conversation, Carignan reportedly told Cannon that he would accept the position if he was not working. By mid-August 2000, the contract was finalized, and LCM began work under the contract. On August 19, 2000, one of the two positions for maintenance coordinator for this job was filled. In September 2000, when Carignan was still unemployed, Cannon contacted Carignan to inquire about his condition and work status. Admittedly, LCM still had not filled both maintenance coordinator positions by that time. Nonetheless, Cannon made no mention of the availability of this job. Carignan testified that he would have accepted the job if Cannon had offered it to him once the contract was finalized in August 2000. Cannon explained that he was reluctant to rehire Carignan because of the nature of his July 2000 departure from the company, which Cannon felt reflected negatively on his dependability.
The facts in this case establish two permissible views as to the facts surrounding Carignan's departure. The WCJ apparently *483 chose the view presented by Carignan, which we find to be reasonably supported by the record and not clearly wrong. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993).
Although a conditional offer was clearly made in this case, the facts as apparently found by the WCJ draw into question whether LCM made such an offer in good faith. When it seemed to him that LCM's promise of a promotion was questionable, Carignan, apparently following the directive of Cannon, took time off to give consideration to his decision to quit. Although Carignan did not return, he reportedly expressed his continued interest in a maintenance coordinator position and asked to be contacted once the contract was finalized. When Cannon contacted Carignan afterwards, he did not inform Carignan that the job had become available. Furthermore, there was no communication of that fact to Carignan at any point in time when the job was shown to be available. These facts provide a reasonable basis for a finding that LCM's conditional offer of a maintenance coordinator position was not made in good faith. Absent such proof, we are unable to conclude that the WCJ clearly erred in finding that LCM failed to prove by competent evidence that an actual position was available for that particular job at the time that the claimant received notification of the job's existence. Accordingly, the award of continued SEB is reasonably supported by the record and is not manifestly erroneous.[6]

Attorney Fees and Penalties
Carignan filed an answer to the appeal seeking additional attorney fees and penalties for the work performed by his attorney on appeal. An award for additional penalties in connection with the additional work necessitated by an appeal is not authorized by law. Therefore, Carignan's request for such is denied. However, a workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending an employer/carrier's unsuccessful appeal. See Genusa v. Dominique, 97-0047 (La.App. 1st Cir.2/20/98), 708 So.2d 784, 792. The instant appeal necessitated additional preparation by Carignan's attorney. Accordingly, we find that he is entitled to an additional $1,000 in attorney fees for his counsel's time spent in preparing for this appeal.

Decree
For the foregoing reasons, the judgment is amended to increase the workers' compensation judge's award of attorney fees by $1,000; otherwise, it is affirmed. Costs of the appeal are assessed to Louisiana Compressor Maintenance Company.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Judge A. Clayton James, retired from the Twenty-Second Judicial District Court, and Michael A. Patterson are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] The workers' compensation judge in this case was Honorable Glynn F. Voisin, of District 9.
[3] Carignan's average weekly wage as a mechanic's helper was stipulated to be $814.92.
[4] As a mechanic's helper, he worked on average in excess of 60 hours a week.
[5] LCM's record of Carignan's attendance discloses that in addition to missing Friday, May 5, 2000, Carignan was out of work for the following week and that he actually returned to work on Monday, May 15, 2000.
[6] Of course, nothing prevents LCM from seeking the reduction or termination of these benefits if it is subsequently able to establish the existence of one or more jobs within Carignan's physical capabilities and within his or LCM's community or reasonable geographic region, the amount of wages that an employee with Carignan's experience and training can expect to earn in that job, and an actual position available for that particular job at the time that Carignan receives notification of the job's existence. See Banks, 696 So.2d at 558-559.