KUHN, J.
| ¡^Defendant-appellant, East Baton Rouge Parish School Board (the School Board), appeals the judgment of the Office of Workers’ Compensation (OWC) awarding supplemental earnings benefits (SEB) to claimant-appellee, Toni G. Edwards, retroactive to the date of her termination as a bus driver. We amend the judgment and, as amended, affirm.
PROCEDURAL AND FACTUAL BACKGROUND
While Edwards drove a bus for the School Board on December 7, 2010, she was involved in a vehicular accident and sustained injuries. She underwent rotator cuff surgery on February 11, 2011, and *678 was released by her doctor to work as a bus driver on July 19, 2011. Upon return to work at the commencement of the 2011/2012 school year, Edwards continued to have pain at “forward flexion 90 degrees” and on August 29, 2011, was again medically restricted from working as a bus driver. On October 3, 2011, the School Board accommodated Edwards’ medical restrictions and provided her a return-to-work position as a bus monitor as part of its program to mitigate workers’ compensation costs. On October 6, 2011, Edwards’ doctor approved the job. Edwards continued working as a bus monitor through the remainder of the school year, receiving her full wages as a bus driver.
At the end of July 2012, prior to the commencement of the 2012/2013 school year, Edwards contacted the School Board and spoke with her supervisor about returning to work as a bus monitor. He advised her not to show up for work because she had been fired for having failed to attend the in-service meetings required of a bus driver.[1] On January 18, 2013, Edwards received a formal letter of termination | ¡¡retroactive to September 11, 2012.
Edwards filed this disputed claim for compensation in September 2012, averring that after her termination, the School Board had discontinued paying her wage benefits.[2] After a trial on the merits, in a judgment issued on November 13, 2013, OWC concluded that Edwards was entitled to SEB in the stipulated amount of $288.63, retroactive to September 11, 2012 “and continuing until further notice of [OWC].” The School Board appealed.[3]
On appeal, the School Board contends that OWC lacked subject matter jurisdiction to determine whether the termination was proper and, therefore, that the judgment awarding SEB should be voided. The School Board also complains that OWC erred in making an award of SEB because Edwards did not meet her burden of proof.
DISCUSSION
Preliminarily we note that this court issued a show-cause order to the parties questioning whether the OWC judgment was a final, appealable ruling since it expressly states that the SEB awarded to Edwards is “continuing until further notice of [OWC].” The power and jurisdiction of OWC over each case shall be continuing. La. R.S. 23:1310.8(A)(1). It is axiomatic that OWC’s authority to make any modifications or changes with respect to former findings or orders relating thereto if, in its opinion, justified is necessarily dependent upon an application by a party and after a contradictory hearing. See La. R.S. 23:1310.8(A)(1). Thus, *679 in light of OWC’s continuing jurisdiction and because the School Board timely filed its appeal to this court, see La. R.S. 23:1310.5(B), the appeal is maintained.
[4We turn now to the School Board’s assertion that OWC lacked subject matter jurisdiction to hear Edwards’ claim. Although the School Board correctly points out that a claim for a retaliatory discharge, which is delictual in nature, is properly heard in district court, see Sampson v. Wendy’s Mgmt, Inc., 593 So.2d 336, 339-40 (La.1992), the damages requested by and awarded to Edwards in this action are for indemnity benefits. OWC is vested with original, exclusive jurisdiction over all claims or disputes arising out of the workers’ compensation law. La. R.S. 23:1310.3(F). Because Edwards averred that her bona fide dispute was as a result of the termination or reduction of her wage benefits, her claim arises under an application of La. R.S. 23:1221 and was correctly before OWC.
In reaching this conclusion we note OWC’s determination that the termination was “not proper” was expressly qualified by its finding that it was improper “for the purpose of not paying workers’ compensation benefits.” OWC neither awarded del-ictual damages nor imposed a civil penalty under La. R.S. 23:1361. Moreover, Edwards did not plead relief pursuant to La. R.S. 23:1361 or allege that she had been terminated because she had asserted a claim for workers’ compensation benefits, see Carpenter v. Allied Waste, 2012-1264 (La.App. 3d Cir.3/13/13), 109 So.3d 1039, 1043, and, therefore, the matter before OWC was not one for retaliatory discharge. The discharge — which the School Board urged was due to Edwards’ failure to maintain her commercial driver’s license by attending in-service meetings as mandated by statute and the unavailability of a bus monitor position, such as that with which it had previously accommodated— her was merely incidental to Edwards’ claim. Therefore, Edwards’ claim for indemnity benefits under La. R.S. 23:1221 arises under the workers’ compensation law, and OWC had jurisdiction to hear the matter.
The School Board next asserts that Edwards failed her burden of proving entitlement to SEB, contending that months before she was terminated, Edwards’ | sdoAor released her back to her pre-injury job as a bus driver. The School Board additionally points out that between September 2011 and May 2012, Edwards successfully worked as a bus monitor (at a bus driver’s salary), demonstrating that she was capable of working.
The threshold prerequisite to recovery of SEB, as set forth in La. R.S. 23:1221(3)(a), is that the employee’s injury results in her inability to earn wages equal to 90 percent or more of the wages she was earning at the time of the injury. The injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn that amount. The analysis is necessarily a facts-and-circumstance one in which OWC is mindful of the jurisprudential tenet that workers’ compensation law is to be liberally construed in favor of coverage. In determining if an injured employee has made a prima facie case of entitlement to SEB, OWC may and should take into account all factors that might bear on the employee’s ability to earn a wage. Carignan v. Louisiana Compressor Maintenance Co., 2002-0180 (La.App. 1st Cir.12/30/02), 836 So.2d 476, 480.
Once the employee successfully bears her burden of proving her disability and resultant inability to earn at least 90 percent of her pre-injury wages, the burden shifts to the employer who, in order to *680 defeat the employee’s claim for SEB or establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered or available to the employee in her or the employer’s community or reasonable geographic region. Id.
Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable |fione. Thus, if the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
In concluding that Edwards sustained her burden of proving an inability to earn 90 percent of her pre-injury wages, at the conclusion of trial, OWC expressly found that Edwards had to get physical clearance from the doctor to return to her job as a bus driver. The School Board contends that the document that Edwards relies on to suggest she was medically restricted from working as a bus driver at the time she was terminated actually supports a finding to the contrary.
Although the record is replete with medical evidence, it does not contain any testimony from the physicians who treated Edwards and, in particular, that of Dr. Craig Greene, who placed her on work restrictions. A second medical opinion was given by Dr. Joe A. Morgan after a physical examination of Edwards. Dr. Morgan’s opinion was set forth in a document dated November 28, 2011, which contained on page 10 a heading entitled “DISCUSSION” with the subheading, “Answers posed to me in a letter dated 11-11-11." Below that were two sections: one designated “Left shoulder ” and the other “Lumbar Spine.” Three statements were set forth by Dr. Morgan under the “Left shoulder ” portion of the document including his opinion that he “would allow [Edwards] to work at her regular job as a bus driver.” This statement appears as the comment “3)” on page 11. The “Lumbar Spine” section contained six statements. It is undisputed that in response to Dr. Morgan’s typed suggestions, Dr. Greene responded in his own handwriting. Dr. Morgan made a total of nine statements, and Dr. Greene wrote “Agree” above his initials six times and “Disagree” above his initials once.[4]
|7Edwards maintains that the first handwritten “Agree” above Dr. Greene’s initials on page 11 corresponds to the first statement Dr. Morgan made under the lumbar-spine section. The School Board interprets Dr. Greene’s initialed agreement as having corresponded to the third statement under the left-shoulder section, i.e., that he agreed that Edwards could return to work as a bus driver. OWC’s decision to credit Edwards’ interpretation of the evidence is not manifestly erroneous or clearly wrong.
Additionally admitted into evidence was a letter from “Strategic Case Management” representative Vicky Canezaro (who also did not testify) to Dr. Greene dated October 6, 2011, in which she requests that he respond to statements she set forth “inserting or deleting information where *681 necessary.” The letter, signed by Dr. Greene, contains the following typed statement:
Maximum medical improvement has been achieved from an orthopedic standpoint. [Edwards] is able to return to work, full duty, as a bus driver as indicated in the functional capacity evaluation.
Handwritten after the statement is the following additional information, “however [patient] states ... after attempting to do so, she was unable to [secondary] to pain.”
Mindful that on appellate review this court is directed to apply the manifest error-clearly wrong standard and, therefore, must determine not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one, we cannot say that OWC’s interpretation of the evidence lacks support for its finding that on the effective date of her termination, Edwards had to get physical clearance from the doctor to return to her job as a bus driver.
In addition, our review shows that on October 6, 2011, Dr. Greene agreed that the accommodated job duties of a bus monitor fell within the ambit of the functional capacity evaluation performed on Edwards on July 14, 2011.[5] | sSubsequently, on October 28, 2011, Dr. Greene stated, “For now we will continue to transition on job duties,” and on December 27, 2011, Dr. Greene’s records show that he “[thinks] Edwards could continue at her job,” which on that date was as a bus monitor. There is no other evidence, medical or otherwise, relative to Edwards’ medical restrictions after December 27, 2011.
The record also contains a job description for a bus monitor,[6] which outlines the necessary physical demands required for performance. Relative to Edwards’ physical concerns, these included an ability to stand, sit, walk, reach, bend, and lift up to 10 lbs with assistance. Edwards’ testimony and that of the School Board’s witnesses indicated that she successfully performed all the tasks assigned to her as a school bus monitor. When she was terminated at the commencement of the 2012/2013 school year, Edwards was willing and able to work in that capacity. It was only because the School Board bus monitor position was no longer available that Edwards was unable to do so.
OWC’s conclusion that Edwards had sustained her burden of proving her disability and inability to earn 90 percent of her pre-injury wages is not erroneous. As we have already determined, OWC’s oral and implicit findings that Edwards needed physical clearance from her doctor and, thus, remained under medical restrictions that precluded her from working as a bus driver were not manifestly erroneous or clearly wrong. Edwards had worked as a bus monitor from October 2011 until September 2012, when the job was no longer available. Edwards’ testimony established that but for the unavailability of a bus monitor job at the commencement of the 2012/2013 school year, she would have continued working in that capacity. At the *682 time she filed her claim for indemnity benefits in September 2012, Edwards had been terminated and was no longer earning any 19wages. Thus, OWC did not err in its conclusion that Edwards proved she was physically disabled from working as a bus driver and unable to earn 90 percent of her pre-injury wages.
Once Edwards demonstrated her inability to earn 90 percent of her pre-injury wages, the burden of proof shifted to the School Board to prove, by a preponderance of the evidence, that Edwards was physically able to perform a certain job and that the job was offered or available to the employee in her or the employer’s community or reasonable geographic region. While it was clearly established that Edwards could work in capacities other than as a bus driver, the record is devoid of any evidence that the School Board offered her a job or that a job within her restrictions was available to Edwards. Thus, lacking such evidence, OWC did not err in concluding that Edwards was entitled to SEB.
DECREE
For clarity and precision, that portion of the judgment that awards weekly SEB benefits in the stipulated amount of $288.63 awarded to Toni G. Edwards “beginning on September 27, 2012, and continuing until further notice of [OWC] ” is amended to expressly state “in accordance with La. R.S. 23:1310.8(A)(1).” In all other respects, the judgment is affirmed. Appeal costs in the amount of $296.45 are assessed against defendant-appellant.
AMENDED, AND AS AMENDED, AFFIRMED.

. See generally La. R.S. 17:497.3, stating that the State Board of Elementary and Secondary Education shall adopt a policy effective no later than the beginning of the 1986-1987 school year providing for the scheduling of in-service training for school bus drivers; and giving authority to a city or parish school board to provide in-service training for school bus drivers on a more frequent basis than established by the policy of the State Board of Elementary and Secondary Education when such training is at no expense to the State.

. Edwards’ disputed claim for compensation states that her wage benefits had been terminated or reduced on September 27, 2011. But the evidence adduced at trial established that wage benefits had been terminated in September 2012.

. Edwards pled entitlement to statutory penalties and attorney’s fees, which was rejected by OWC. Although Edwards filed an answer with this court urging OWC’s rejection was erroneous and entitlement to attorney’s fees on appeal, she did not brifef the answer. Thus, these issues are considered abandoned. See La. U.R.C.A. Rule 2-12.4.

. It is obvious and undisputed that the single disagreeing response Dr. Greene made was to comment number "5)” in the lumbar-spine section since he drew an arrow pointing to that statement.

. Peak Performance Physical Therapy owner, Scott A. Dickie, stated that the results of the functional capacity evaluation indicated, “Edwards is able to work at the LIGHT-MEDIUM Physical Demand Level for an 8 hour day according to the Dictionary of Occupational Titles.” Dickie stated that Edwards' back lift capacity was 25 lbs; shoulder lift was 25 lbs; overhead lift was 15 lbs; carrying was 20 lbs; and one-hand carry was 20 lbs.

. Although the description states the job title is "Transfer Monitor,” the testimonial evidence established that the terms transfer monitor and bus monitor referred to the same job.